Melissa Corral
Nevada Bar No. 14182
Michael Kagan
Nevada Bar No. 12318C
UNLV Immigration Clinic
Thomas & Mack Legal Clinic
William S. Boyd School of Law
University of Nevada, Las Vegas
P.O. Box 451003
Las Vegas, NV 89170
Office: 702-895-2080
Fax: 702-895-2081
michael.kagan@unlv.edu
*Attorneys for Petitioner*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA (Las Vegas)

| | |
|---|---|
| **ADRIAN ARTURO VILORIA AVILES**<br><br>*Plaintiff-Petitioner*,<br><br>v.<br><br>**DONALD J. TRUMP,**<br>in his official capacity as President of the United States, The White House, 1600 Pennsylvania Avenue, NW, Washington, D.C. 20500;<br><br>**PAMELA J. BONDI,**<br>in her official capacity as Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC, 20530;<br><br>**KRISTI NOEM**,<br>in her official capacity as Secretary, U.S. Department of Homeland Security; 245 Murray Lane SW, Washington, DC 20528;<br><br>**MADISON SHEAHAN,**<br>in her official capacity as Acting Director and Senior Official Performing the Duties of the Director for U.S. Immigration and Customs | Civil Action No. _____<br><br>Agency No. A 246 871 105<br><br><br><br>**VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Enforcement, 500 12th Street, SW,
Washington, DC 20536;

**MARCO RUBIO,**
     in his official capacity as Secretary,
     U.S. Department of State, 2201 C
     Street, NW, Washington, DC 20520;

**JASON KNIGHT,**
     in his official capacity as Acting Field
     Office Director, Salt Lake City Field
     Office Director, U.S. Immigration &
     Customs Enforcement, 2975 Decker
     Lake Drive Suite 100, West Valley
     City, UT 84119-6096

**CHRISTOPHER CHESTNUT,**
     in his official capacity as Warden,
     Nevada Southern Detention Facility,
     2190 E. Mesquite Ave.
     Pahrump, NV 89060

*Defendant-Respondents.*

## INTRODUCTION

1. Adrian Arturo Viloria Aviles ("Plaintiff-Petitioner") brings this petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2241, the All-Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States to challenge his summary removal.

2. Petitioner is a citizen of Venezuela.  His is currently detained at **Nevada Southern Detention Center ("NSDC"), 2190 E Mesquite Ave, Pahrump, NV 89060.**

3. On information and belief, Plaintiff-Petitioner is threatened with immediate removal from the State of Nevada.  Plaintiff-Petitioner seeks this Court's intervention to temporarily restrain this summary removal, and to determine that this use of the AEA is unlawful and must be stopped.

## JURISDICTION AND VENUE

4. This case arises under the Alien Enemies Act ("AEA"); the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq. and its implementing regulations; the Convention Against Torture ("CAT"), see Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231); the All Writs Act, 28 U.S.C. § 1651, and the Fifth Amendment to the U.S. Constitution.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 et seq. (habeas corpus), art. I, § 9, cl. 2 of the U.S. Constitution (Suspension Clause), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 1361 (mandamus), and 28 U.S.C. § 1651 (All Writs Act). Defendants have waived sovereign immunity for purposes of this suit. 5 U.S.C. §§ 702, 706.

6. The Court may grant relief pursuant to 28 U.S.C. § 2241; 28 U.S.C. § 2243; the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; 28 U.S.C. § 1331; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers.

7. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because, Plaintiff-Petitioner is detained at **NSDC, 2190 E Mesquite Ave, Pahrump, NV 89060;** which is within the geographic jurisdiction of the District of Nevada (Las Vegas), and a substantial part of the events or omissions giving rise to the claim occurred in this district. *See* 28 U.S.C. § 1391(e).

## **PARTIES**

8. Plaintiff-Petitioner is a citizen of Venezuela who is detained at **NSDC, 2190 E Mesquite Ave, Pahrump, NV 89060**. Plaintiff-Petitioner entered the U.S. in August 2023 and was released under parole. Plaintiff was residing in Utah, when Immigration Customs & Enforcement ("ICE") detained him and then transferred him to NSDC. On information and belief, Plaintiff-Petitioner is at risk of imminent removal as he was notified today he will be transferred to New Mexico tomorrow.

9. Defendant Donald Trump is the President of the United States. He is sued in his official capacity. In that capacity, he issued the Proclamation under the Alien Enemies Act.

10. Defendant-Respondent Pamela J. Bondi is the U.S. Attorney General at the U.S. Department of Justice, which is a cabinet-level department of the United States government. She is sued in her official capacity.

11. Defendant-Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security, which is a cabinet-level department of the United States government. She is sued in her official capacity. In that capacity, Defendant Noem is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

12. Defendant-Respondent Madison Sheahan is the Acting Director and Senior Performing the Duties of the Director of ICE. Defendant Sheahan is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Defendant Sheahan is a legal custodian of Plaintiff-Petitioner. Defendant Sheahan is sued in her official capacity.

13. Defendant Marico Rubio is the Secretary of State at the U.S. Department of State. He is sued in his official capacity.

14. Defendant-Respondent Jason Knight, is the Acting Director of the Salt Lake City Field Office of ICE Enforcement and Removal Operations, a federal law enforcement agency within the Department of Homeland Security ("DHS"). ERO is a directorate within ICE whose responsibilities include operating the immigration detention system. In his capacity as ICE ERO Salt Lake City, Acting Field Office Director, Respondent Knight exercises control over and is a custodian of immigration detainees held at NSDC, **2190 E Mesquite Ave, Pahrump, NV 89060.** At all times relevant to this Complaint, Respondent Knight was acting within the scope and course of his employment with ICE. He is sued in his official capacity.

15. Defendant – Respondent Christopher Chestnut, the Warden of NSDC, a state agency within Washoe County. Respondent Chestnut exercises physical control immigration detainees held at NSDC, **2190 E Mesquite Ave, Pahrump, NV 89060.** Respondent Chestnut is sued in his official capacity.

## BACKGROUND

16. The AEA is a wartime authority enacted in 1798 that grants the President specific powers with respect to the regulation, detention, and deportation of enemy aliens.

17. The AEA, as codified today, provides that "[w]henever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies." 50 U.S.C. § 21.

18. The AEA can thus be triggered in only two situations.  The first is when a formal declared war exists with a foreign nation or government.  The second is when a foreign nation or government perpetrates, attempts, or threatens an invasion or predatory incursion against the territory of the United States.

19. To trigger the AEA, the President must make a public proclamation of the declared war, or of the attempted or threatened invasion or predatory incursion. *Id.*

20. The AEA also provides that noncitizens must be permitted the full time to depart as stipulated by any treaty between the United States and the enemy nation, unless the noncitizen has engaged in "actual hostility" against the United States.  If no such treaty exists, the President may declare a "reasonable time" for departure, "according to the dictates of humanity and national hospitality." *Id.* § 22.

21. Under the AEA, noncitizens who "refuse or neglect to depart" are subject to removal.  *Id.* § 21.

22. The Act has been used only three times in American history, all during actual or imminent wartime.

23. The AEA was first invoked several months into the War of 1812, but President Madison did not use the AEA to remove anyone from the United States during the war.

24. The AEA was invoked a second time during World War I by President Wilson. Upon information and belief, there were no removals effectuated pursuant to the AEA during World War I.

25. The AEA was used again during World War II, though it was never used as a widespread method of removal.

26. On December 7, 1941, after the Japanese bombed Hawaii in the attack on Pearl Harbor, President Roosevelt proclaimed that Japan had perpetrated an invasion upon the territory of the United States. The president issued regulations applicable to Japanese nationals living in the United States. The next day Congress declared war on Japan.

27. On the same day, President Roosevelt issued two separate proclamations stating that an invasion or predatory incursion was threatened upon the territory of the United States by Germany and Italy. The president incorporated the same regulations that were already in effect as to Japanese people for German and Italian people. Three days later Congress voted unanimously to declare war against Germany and Italy.

28. Congress declared war against Hungary, Romania, and Bulgaria on June 5, 1942. Just over a month later, President Roosevelt issued a proclamation recognizing that declaration of war and invoking the AEA against citizens of those countries.

29. Under these proclamations, the United States infamously interned noncitizens from Japan, Germany, Italy, Hungary Romania, and Bulgaria (with U.S. citizens of Japanese descent subject to a separate order that did not rely on the AEA).

30. It was not until the end of hostilities that the President provided for the removal of alien enemies from the United States under the AEA. On July 14, 1945, President Truman issued a proclamation providing that alien enemies detained as a danger to public peace and safety "shall be subject upon the order of the Attorney General to removal from the United States." The Department of Justice subsequently issued regulations laying out the removal process. See 10 Fed. Reg. 12189 (Sept. 28, 1945). It was never used as a widespread method of removal.

### Systemic Overhaul of Immigration Law in 1952

31. Following the end of World War II, Congress consolidated U.S. immigration laws into a single text under the Immigration and Nationality Act of 1952 ("INA").

32. The INA, and its subsequent amendments, provide for a comprehensive system of procedures that the government must follow before removing a noncitizen from the United States. The INA provides the exclusive procedure by which the government may determine whether to remove an individual. 8 U.S.C. § 1229a(a)(3).

33. In addition to laying out the process by which the government determines whether to remove an individual, the INA also enshrines certain forms of humanitarian protection.

34. First, the INA provides that "[a]ny [noncitizen] who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such [noncitizen]'s status," may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, a noncitizen must show a "well-founded fear of persecution" on account of a protected ground, such as race, nationality, political opinion, or religion. 8 U.S.C. § 1101(a)(42)(A).

35. Second, Congress has barred the removal of an individual to a country where it is more likely than not that they would face persecution on one of these protected grounds. 8 U.S.C. §

6

1231(b)(3). That protection implements this country's obligations under the 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees. The relevant form of relief, known as "withholding of removal," requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum; granting that relief is mandatory if the standard is met absent limited exceptions.

36. Third, the Convention Against Torture ("CAT") prohibits the government from returning a noncitizen to a country where it is more likely than not that they would face torture. See 8 U.S.C. § 1231 note. That protection implements the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242. As with withholding of removal, CAT relief also requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum and relief is mandatory if that standard is met. There is no exception to CAT relief.

## President Trump's Proclamation Invoking the AEA

37. On March 15, 2025, President Trump signed a proclamation invoking the AEA against members of the Tren de Aragua ("TdA") gang. *See Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren de Aragua*, signed March 15, 2025.

38. The Proclamation characterizes TdA as a "hybrid criminal state" engaged in an invasion and predatory incursion into the United States as a basis to invoke the AEA. *Id.*

39. It characterizes TdA, a criminal organization, as a foreign nation or government, and does not name Venezuela itself as the "foreign government" as the target of the AEA invocation.

40. The Proclamation alleges that TdA is "perpetrating an invasion of and predatory incursion into the United States, and which poses a substantial danger to the United States." It alleges TdA "has invaded the United States and continues to invade, attempt to invade, and threaten to

invade the country; perpetrated irregular warfare within the country; and used drug trafficking as a weapon against our citizens." *Id.*

41. The Proclamation alleges that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *Id.* § 1.

42. The Proclamation asserts that "all such members of TdA are, by virtue of their membership in that organization, chargeable with actual hostility against the United States and are therefore ineligible for the benefits of 50 U.S.C. 22.  I further find and declare that all such members of [TdA] are a danger to the public peace or safety of the United States." *Id.*  It further asserts that such alleged members "are subject to immediate apprehension, detention, and removal, and further that they shall not be permitted residence in the United States." *Id.* § 3.

43. Upon information and belief, to determine who is an "alien enemy" subject to the Proclamation, an ICE officer will complete and sign a standardized checklist, which is then attested to by a supervising officer.  The checklist, which utilizes a points-based methodology adapted from Bureau of Prisons forms, documents whether the noncitizen satisfies all applicable criteria.  Though the noncitizen must then sign the checklist, it will not be translated into Spanish or into any other language.

44. Upon information and belief, after signing the checklist document, the noncitizen is subject to removal to any location as may be directed but consistent with applicable laws.

45. Upon information and belief, noncitizens subject to the Proclamation will not be afforded credible fear interviews for asylum, nor will claims for protection under CAT be recognized.

46. TdA, a criminal organization, is not a nation or foreign government and is not part of the Venezuelan government, no does it receive support from the government.

47. The United States is not in a declared war with Venezuela. The United States cannot declare war against TdA because it is not a nation. And neither Venezuela nor TdA have invaded or threatened to invade the United States.

48. There is a significant risk that even individuals who do not fall under the terms of the Proclamation will be subject to it.

49. As a result, Venezuelans such as Petitioner-Plaintiff are at imminent risk of deportation without any hearing or meaningful review, regardless of their ties to the United States or the availability of claims for relief from and defenses to removal.

## HARM TO PLAINTIFF-PETITIONER

50. Adrian Arturo Viloria Aviles fears that he is at immediate risk of removal under the Proclamation because of his Venezuelan nationality and designation by DHS as a Tren de Aragua member as noted in his I-213, Record of Deportable/Inadmissible Alien. See Exhibit A, I-213, Record of Deportable/Inadmissible Alien. Furthermore, such document delineates some of the tattoos Petitioner-Plaintiff has on his body. There have already been ongoing immigration proceedings in Las Vegas Immigration Court. Plaintiff-Petitioner is scheduled for a bond redetermination hearing in such Court on April 9, 2025 and for an individual hearing on asylum, withholding of removal, and CAT protection on April 16, 2025. **However, he recently notified counsel via a family member that he would soon by moved out of Nevada to another state. By transferring Petitioner-Plaintiff out of Nevada so close to his two hearings, ICE is likely to prevent, obstruct, or delay Petitioner-Plantiff's access to due process.** Adrian Arturo Viloria Aviles is not involved with TdA in any way, but he is at risk of summary removal under the Proclamation nevertheless. Moreover, on information

and belief, he is at risk of being deported to El Salvador, where he is at risk of being detained indefinitely and tortured.

51. This paragraph is incorporated by reference into the following claims.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### *Ultra Vires*, Violation of 50 U.S.C. § 21

#### (All Defendants)

52. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

53. The AEA does not authorize the removal of noncitizens from the United States absent a "declared war" or a "perpetrated, attempted, or threatened" "invasion or predatory incursion" into the United States by a "foreign nation or government." *See* 50 U.S.C. § 21. The expected Proclamation on its face mandates Plaintiff-Petitioner's removal under the AEA where those preconditions have not been met.

54. The AEA Process, which was purportedly established pursuant to the authority of 50 U.S.C. § 21, was not authorized by that law.

55. The application of the AEA Process to Plaintiff-Petitioner is therefore *ultra vires*. *See* 5 U.S.C. § 706(2)(A).

### SECOND CLAIM FOR RELIEF

#### Violation of 8 U.S.C. § 1101, *et seq.*

#### (all Defendants)

56. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

57. The INA, 8 U.S.C. § 1101, *et seq.*, sets out the sole mechanisms established by Congress for the removal of noncitizens.

58. The INA provides that a removal proceeding before an immigration judge under 8 U.S.C. § 1229a is "the sole and exclusive procedure" by which the government may determine whether to remove an individual, "[u]nless otherwise specified" in the INA.  8 U.S.C. § 1229a(a)(3).

59. The AEA Process creates an alternative removal mechanism outside of the immigration laws set forth by Congress in Title 8.

60. The INA's "exclusive procedure" and statutory protections apply to any removal of a noncitizen from the United States, including removals authorized by the AEA.  Because the AEA Process provides for the removal of Plaintiff-Petitioner without the procedures specified in the INA, it violates 8 U.S.C. § 1229a and the INA.

61. As a result, the application of the AEA to Plaintiff-Petitioner, which will result in their removal from the United States, is contrary to law. *See* 5 U.S.C. § 706(2)(A).

62. In addition, by refusing to grant Plaintiff-Petitioner access to the procedures specified in the INA, Defendants have withheld and unreasonably delayed actions mandated by the statute. 5 U.S.C. § 706(1).

### THIRD CLAIM FOR RELIEF

**Violation of 8 U.S.C. § 1158, Asylum**

**(All Defendants)**

63. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

64. The INA provides, with certain exceptions, that "[a]ny [noncitizen] who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may

apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1).

65. Defendants' application of the AEA Process to Plaintiff-Petitioner prevents him from applying for asylum in accordance with 8 U.S.C. § 1158(a)(1), and is therefore contrary to law. *See* 5 U.S.C. § 706(2)(A).

## FOURTH CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1231(b)(3), Withholding of Removal

### (All Defendants)

66. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

67. The "withholding of removal" statute, INA § 241(b)(3), *codified at* 8 U.S.C. § 1231(b)(3), bars the removal of noncitizens to a country where it is more likely than not that they would face persecution.

68. Defendants' AEA Process and regulations violate the withholding of removal statute because it does not provide adequate safeguards to ensure that Plaintiff-Petitioner is not returned to a country where it is more likely than not that they would face persecution. As a result, Defendants' actions against Plaintiff-Petitioner are contrary to law. *See* 5 U.S.C. § 706(2)(A).

69. In addition, by refusing to grant Plaintiff-Petitioner the procedural protections to which he is entitled, Defendants have withheld and unreasonably delayed actions mandated by the statute. 5 U.S.C. § 706(1).

///

///

///

///

## FIFTH CLAIM FOR RELIEF

### Violation of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"),

### codified at 8 U.S.C. § 1231 note

### (all Defendants)

70. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

71. FARRA prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture.

72. Defendants' AEA Process and regulations violate FARRA because it does not provide adequate safeguards to ensure that Plaintiff-Petitioner is not returned to a country where it is more likely than not that they would face torture. As a result, Defendants' actions against Plaintiff-Petitioner are contrary to law. *See* 5 U.S.C. § 702(2)(A).

73. In addition, by refusing to grant Plaintiff-Petitioner the procedures to which his is entitled, Defendants have withheld and unreasonably delayed actions mandated by the statute. 5 U.S.C. § 706(1).

## SIXTH CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

### (All Defendants except Defendant Trump)

74. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

75. The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion." 5 U.S.C. § 706(2)(A).

76. Defendants' actions are arbitrary and capricious. Defendants have failed to consider relevant factors in applying the AEA Process to Venezuelans, including their fear of persecution and

torture in their home country; relied on factors Congress did not intend to be considered; and offered no sufficient explanation for their decision to remove them from this country.

77. Plaintiff-Petitioner's subjection to the AEA Process is arbitrary and capricious because it also departs from the agency's existing policies prohibiting the return of individuals who fear persecution or torture, without providing a reasoned explanation for departing from these policies.

## SEVENTH CLAIM FOR RELIEF

### Violation of 50 U.S.C. § 22

### (All Defendants)

78. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

79. The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

80. The AEA requires that noncitizens whose removal is authorized by the AEA, unless "chargeable with actual hostility, or other crime against the public safety," be allowed the full time stipulated by treaty to depart or a reasonable time in which to settle their affairs before departing.  *See* 50 U.S.C. § 22.  The Proclamation on its face denies Plaintiff-Petitioner any time under Section 22 to settle their affairs, because it declares everyone subject to the Proclamation to be "chargeable with actual hostility" and to be a "danger to public safety."

81. The AEA Process thus contravenes 50 U.S.C. § 22 and is *ultra vires*.

82. The application of the AEA Process to Plaintiff-Petitioner is contrary to law.

///

///

14

## EIGHTH CLAIM FOR RELIEF

### Violation of Due Process under the Fifth Amendment

### (All Defendants)

83. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

84. The Due Process Clause of the Fifth Amendment provides in relevant part that: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V,

85. In denying Plaintiff-Petitioner meaningful procedural protections to challenge their removal, the Proclamation violates due process.

86. The Proclamation on its face also denies Plaintiff-Petitioner any time to settle their affairs before departing and thus violates the due process.

## NINTH CLAIM FOR RELIEF

### Violation of Habeas Corpus

### (All Defendants)

87. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

88. Detainees have the right to file petitions for habeas corpus to challenge the legality of their detention or raise other claims related to their detention or to the basis for their removal.

89. The detention of Plaintiff-Petitioner under the Alien Enemies Act has violated and continues to violate their right to habeas corpus. See U.S. Const. art. I, § 9, cl. 2 (Suspension Clause); 28 U.S.C. § 2241.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Petitioner respectfully pray this Court to:

a.  Grant a temporary restraining order to preserve the status quo, keeping Plaintiff-Petitioner within the state of Nevada, pending further proceedings;

b.  Issue permanent injunctive relief prohibiting Defendants from removing Plaintiff-Petitioner pursuant to the Alien Enemies Act Proclamation;

c.  Declare unlawful the AEA Process;

d.  Enter an order enjoining Defendants from applying the AEA Process;

e.  Enter an order providing relief by ordering that Defendants to stay their removals under the Proclamation and remove anyone subject to the Proclamation from the AEA Process;

f.  Grant a writ of habeas corpus to Plaintiff-Petitioner that enjoins Defendants from removing him under the AEA;

g.  Award Plaintiff-Petitioner's counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

h.  Grant such further relief as the Court deems just, equitable, and appropriate.

Dated: April 3, 2025                                     Respectfully Submitted,

                                                        /s/Melissa Corral
                                                        Melissa Corral
                                                        Nevada Bar. No. 14182

                                                        /s/Michael Kagan
                                                        Michael Kagan
                                                        Nevada Bar. No. 12318C

                                                        Attorneys for Petitioner

                                                        UNLV IMMIGRATION CLINIC
                                                        Thomas & Mack Legal Clinic
                                                        William S. Boyd School of Law
                                                        University of Nevada, Las Vegas
                                                        P.O. Box 451003
                                                        Las Vegas, Nevada 89154-1003
                                                        Office: 702-895-3000

## **28 U.S.C. § 2242 VERIFICATION STATEMENT**

I am submitting this verification on behalf of the Plaintiff-Petitioner because I am one of the

Petitioner's attorneys.  I have discussed with the Plaintiff-Petitioner the events described in this

Petition.  On the basis of those discussions, I hereby verify that the statements made in this Verified

Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.


Dated:  April 3, 2025                                    /s/Melissa Corral
                                                        Melissa Corral
                                                        Deputy Managing Attorney
                                                        UNLV Immigration Clinic
                                                        William S. Boyd School of Law
                                                        University of Nevada, Las Vegas
                                                        4505 S. Maryland Parkway
                                                        Box 451003
                                                        Las Vegas, Nevada 89154-1003
                                                        Melissa.corral@unlv.edu
                                                        Office: 702-895-3000

# EXHIBIT A

*Original document*
*Please send it back.*

| U.S. Department of Homeland Security | Subject ID : 398033126 | Record of Deportable/Inadmissible Alien |
|---|---|---|

| Family Name (CAPS) VILORIA-AVILES, ADRIAN ARTURO | First | Middle | Sex M | Hair BRO | Eyes BRO | Cmplxn MED |
|---|---|---|---|---|---|---|

| Country of Citizenship VENEZUELA | Passport Number and Country of Issue | File Number SLC2502000218 246 871 105 | Height 70 | Weight 150 | Occupation Door Dash |
|---|---|---|---|---|---|

| U.S. Address 5303 S HEATH AVE SALT LAKE CITY, UTAH, 841186850 | | Scars and Marks See Narrative |
|---|---|---|

| Date, Place, Time, and Manner of Last Entry 08/30/2023, EGP, W | Passenger Boarded at | F.B.I. Number A91R46067 | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |
|---|---|---|---|

| Number, Street, City, Province (State) and Country of Permanent Residence UNKNOWN FOREIGN ADDRESS MARACAI, VENEZUELA | Method of Location/Apprehension L NA |
|---|---|

| Date of Birth 04/28/1995   Age: 29 | Date of Action 02/17/2025 | Location Code SLC/SLC | At/Near See I-831 | Date/Hour 02/17/2025 12:04 |
|---|---|---|---|---|

| City, Province (State) and Country of Birth Maracay, VENEZUELA | AR ☒ | Form: (Type and No.) Lifted ☐ Not Lifted ☐ | By S 3464 HOWARD |
|---|---|---|---|

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|

| Immigration Record POSITIVE - See Narrative | Criminal Record None Known |
|---|---|

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children None |
|---|---|

| Father's Name, Nationality, and Address, if Known VILORIA, ALFREDO  NATIONALITY: VENEZUELA ADDRESS: Unknown foreign address Maracai, VENEZUELA | Mother's Present and Maiden Names, Nationality, and Address, if Known AVILES RINCONES, MARGARET ... SEE INFO IN NARRATIVE |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession None Claimed | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) See Narrative |
|---|---|---|---|

| Name and Address of (Last) (Current) U.S. Employer Door Dash | Type of Employment Employee | Salary Hr | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)
FIN: 1344669707

Left Index fingerprint                Right Index fingerprint

SCARS MARKS AND TATTOOS
--------------------------------
TATTOO ARM, RIGHT, NONSPECIFIC - Skull and owl right forearm
TATTOO ARM, RIGHT, NONSPECIFIC - Character
TATTOO SHOULDER, RIGHT - Dragon
TATTOO ARM, RIGHT, NONSPECIFIC - Chinese writing

Subject Health Status
--------------------------------
The subject does not claim good health. Please contact your local IHSC health care staff member for
...(CONTINUED ON I-831)

| Alien has been advised of communication privileges | (Date/Initials) 2/17/25 | MATTHEW RANDALL Deportation Officer (Signature and Title of Immigration Officer) |
|---|---|---|

| Distribution: AFile | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| | Officer: MATTHEW RANDALL |
| | on: February 17, 2025    (time) |
| | Disposition: Other |
| | Examining Officer: LAWRENCE, MARTIN |

Form I-213 (Rev. 08/01/07)

U.S. Department of Homeland Security                Continuation Page for Form I-213

| Alien's Name<br>VILORIA-AVILES, ADRIAN ARTURO | File Number<br>246 871 105<br>Event No: SLC2502000218 | Date<br>02/17/2025 |

additional information. Subject claims pain from his lower left jaw. Hardware from his surgery from 2019.

Current Administrative Charges
--------------------------------
02/17/2025 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)

Previous Criminal History
--------------------------------------
Subject has no criminal history

CRIMINAL AFFILIATIONS
--------------------------------------
Subject has been identified as a Member/Active of Tren de Aragua

Records Checked
------------------
CIS Pos
TECS Pos
EARM Pos
AFIS Pos

At/Near
--------------------------------------
Kearns, Utah

MOTHER INFORMATION
--------------------
NATIONALITY: VENEZUELA
ADDRESS:
    Unknown foreign address, Maracai, VENEZUELA

Record of Deportable/Excludable Alien:
ENCOUNTER DATA
VILORIA-Aviles, Rodolfo was encountered during a vehicle stop at 6200 S 4800 W Kearns, UT on February 17, 2025.  VILORIA-Aviles had been previously identified as a person of interest for ties to the criminal organization known as Tren de Aragua (TDA). His identity was confirmed, and he was taken into custody and transported to the Salt Lake City Field Office for processing.

ENTRY DATA
On August 30, 2023, VILORIA-Aviles was encountered by Border Patrol Agents in the brush in the Del Rio Sector area of operations. After a brief interview, it was determined that this subject was not a citizen or resident of the United States. He was placed under arrest, transported to a Border Patrol Station for further processing, and advised of his rights. He was later released due to lack of detention space.

IMMIGRATION HISTORY

| Signature<br>MATTHEW RUNDELL | Title<br>Deportation Officer |

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                Continuation Page for Form **I-213**

| Alien's Name<br>**VILORIA-AVILES, ADRIAN ARTURO** | File Number<br>**246 871 105**<br>Event No: SLC2502000218 | Date<br>**02/17/2025** |
|---|---|---|

On August 30, 2023, VILORIA-Aviles was arrested by the US Border Patrol. He was issued an I-830, Expedited Removal and later was found to have a credible fear claim. He was issued an I-862, Notice to Appear. His next hearing date was not available.

CRIMINAL HISTORY
On September 5, 2024, VILORIA-Aviles was tried by the 4th Judicial District - Spanish Fork, for the offense of OPERATING A VEHICLE WITHOUT INSURANCE, a misdemeanor, for which he was ordered to pay a fine. Case# 245300821

On September 5, 2024, VILORIA-Aviles was tried by the 4th Judicial District - Spanish Fork, for the offense of DISCHARGE FIREARM IN CITY LIMITS, a misdemeanor. His plea was held in abeyance. Case# 241300228

SQ-11/NN-13 records checks for outstanding wants, warrants and lookouts were negative.

BASIS FOR ICE CHARGES
VILORIA-Aviles makes no claim to USC or LPR and is amenable to removal under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that VILORIA-Aviles is an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

DISPOSITION
VILORIA-Aviles was advised of his right to speak to a consulate officer from Venezuela.
VILORIA-Aviles states he has fear of persecution or torture if removed to Venezuela.
VILORIA-Aviles is being processed as a change of venue from Salt Lake City, UT to Las Vegas, NV.
VILORIA-Aviles will be held in ICE custody pending an immigration hearing.
VILORIA-Aviles was provided a list of free legal services and a copy of the On-line Detainee Locator System privacy notice.
VILORIA-Aviles claims he did not attend/graduate high school in the United States.
VILORIA-Aviles claims he did not serve in the United States military.
VILORIA-Aviles claims to have one minor child who was born in and resides in Venezuela.
VILORIA-Aviles claims to be single.
VILORIA-Aviles claims to have had an operation in 2019 and still has hardware in his mouth and some residual pain.


VILORIA-Aviles successfully completed a phone call on February 17, 2025.
Phone call witnessed by Officer Randall.


Other Identifying Numbers
------------------------------------
ALIEN-246871105

| Signature<br>MATTHEW RANDALL | Title<br>**Deportation Officer** |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

ASE NUMBER: 245107440 Traffic Court Case

Violation Date: 12-26-2024

ACCOUNT SUMMARY
| | |
|---|---|
| Total Revenue Amount Due: | 859.25 |
| Amount Paid: | 204.00 |
| Amount Credit: | 0.00 |
| Balance: | 655.25 |

Time Pay: 127.00 monthly on the 9th.
Most Recent Payment: February 10, 2025
Final Payment: July 09, 2025

REVENUE DETAIL - TYPE: FINE
| | |
|---|---|
| Original Amount Due: | 850.00 |
| Amended Amount Due: | 850.00 |
| Amount Paid: | 194.75 |
| Amount Credit: | 0.00 |
| Balance: | 655.25 |

REVENUE DETAIL - TYPE: Interest
| | |
|---|---|
| Amount Paid: | 4.25 |
| Amount Credit: | 0.00 |
| Balance: | 0.00 |

Account Adjustments Sum To Date    Amount Reason
2025-02-10    4.25 Criminal post judgment interest

REVENUE DETAIL - TYPE: ELECTRONIC PAYMENT
| | |
|---|---|
| Original Amount Due: | 5.00 |
| Amended Amount Due: | 5.00 |
| Amount Paid: | 5.00 |
| Amount Credit: | 0.00 |
| Balance: | 0.00 |

CASE NOTE
Cit. Issued: 12/26/2024 11:17 Activity ID: T10162475 by SARGENT, BRADY

PROCEEDINGS
| | |
|---|---|
| 12-28-2024 | Case filed by efiler |
| 12-28-2024 | Judge CHRISTOPHER BOWN assigned. |
| 12-28-2024 | Note: Deferred Traffic Prosecution eligibility is pending. |
| 12-28-2024 | Note: Driver license is a Commercial license OR the license is in a non-valid/inactive status. Case marked not eligible for Deferred Traffic Prosecution. |
| 01-08-2025 | Note: Def came to window re: citation def is spanish speaking. Clerk provided fine amount and due date |
| 01-09-2025 | Fine Account created Total Due: 850.00 |
| 01-09-2025 | Fine Payment Received:  72.00 |
| 01-09-2025 | Note: Added to payment schedule 1678336 |
| 01-09-2025 | Filed: Payment agreement |
| 02-10-2025 | Fee Account created Total Due: 4.25 |
| 02-10-2025 | Note: Added to payment schedule 1678336 |

ASE NUMBER: 245107440 Traffic Court Case

| )2-10-2025 | Fee Account created Total Due: 5.00 |
| )2-10-2025 | Fine Payment Received:  122.75 |
| )2-10-2025 | Interest Payment Received:  4.25 |
| )2-10-2025 | ELECTRONIC PAYMENT Payment Received:  5.00 |
| | Note: ELECTRONIC PAYMENT |